UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

|  |  |  |
|---|---|---|
| KAREN A. KRAUSE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11-cv-1013 |
| | ) | |
| v. | ) | Honorable Joseph G. Scoville |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **OPINION** |
| Defendant. | ) | |
| | ) | |

       This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits.  On October 15, 2008, plaintiff filed her applications for benefits alleging a December 15, 2005 onset of disability.[1]  (A.R. 121-29).  Her disability insured status expired on December 31, 2010.  Thus, it was plaintiff's burden on her claim for DIB benefits to submit evidence demonstrating that she was disabled on or before December 31, 2010.  *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

---

       [1] November 2008 is plaintiff's earliest possible entitlement to SSI benefits.  SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).  The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed.  20 C.F.R. § 416.335.

Plaintiff's claims for DIB and SSI benefits were denied on initial review.  (A.R. 53-60).  On February 23, 2011, plaintiff received a hearing before an administrative law judge (ALJ), at which she was represented by counsel.  (A.R. 26-50).  On February 25, 2011, the ALJ issued a decision finding that plaintiff was not disabled.  (A.R. 11-21).  The Appeals Council denied review on July 28, 2011 (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment.  (docket # 8).  She argues that the Commissioner's decision should be overturned because the ALJ failed to give appropriate weight to the opinions of treating sources Flora Biancalana, M.D., and Nurse Practitioner Linda Rasmussen.  (Plf. Brief at 2, docket # 9).  Upon review, the Commissioner's decision will be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).  The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the

evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, No. 11-2304, __ F.3d __, 2012 WL 3871353, at * 4 (6th Cir. Sept. 7, 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ."  42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006).  "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  . . .  This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference."  *Buxton*, 246 F.3d at 772-73.  "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently."  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ.").  "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from December 15, 2005, through December 31, 2010, but not thereafter.  (A.R. 13).

Plaintiff had not engaged in substantial gainful activity on or after December 15, 2005. (A.R. 13).

Plaintiff had the following severe impairments: "migraines, neck pain status-post [2002] surgery,

and alcohol abuse by history with sustained sobriety." (A.R. 13). Plaintiff did not have an

impairment or combination of impairments which met or equaled the requirements of the listing of

impairments. (A.R. 13). The ALJ found that plaintiff retained the residual functional capacity

(RFC) for a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the residual
> functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and
> 416.967(a) except she may not perform any overhead reaching. She would be limited to
> simple, routine, and repetitive tasks. She must avoid any repetitive rotation, flexion, and
> extension of the neck.

(A.R. 14). The ALJ determined that plaintiff's subjective complaints were not fully credible. (A.R.

14-19). Plaintiff was unable to perform any past relevant work. (A.R. 19). Plaintiff was 41-years-

old as of her alleged onset of disability, 46-years-old as of the date her disability insured status

expired, and 47-years-old as of the date of the ALJ's decision. Thus, at all times relevant to her

claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (A.R. 19). Plaintiff

has a limited education and is able to communicate in English. (A.R. 19). The transferability of

work skills was not material to a disability determination. (A.R. 19). The ALJ then turned to the

testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of

plaintiff's age and with her RFC, education, and work experience, the VE testified that there were

5,300 jobs in the State of Michigan that the hypothetical person would be capable of performing.

(A.R. 47-49). The ALJ held that this constituted a significant number of jobs. Using Rule 201.19

of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled.[2]

(A.R. 20).

### 1.

Plaintiff argues that the ALJ "erroneously failed to give appropriate weight to the opinions of Dr. Flora Biancala [sic] M.D. and Linda Rasmussen A.N.P., the claimant's primary treating sources for her physical impairments since 2009." (Plf. Brief at 2). She argues that the ALJ should have given controlling weight to a September 30, 2010 questionnaire signed by Rasmussen and Biancalana offering opinions that plaintiff's RFC was extremely restricted:

> Specifically, the doctor opined that Ms. Krause could lift less than 10 pounds occasionally. She could rarely turn her head left or right and never look up. The doctor noted that Ms. Krause suffers from chronic sharp, burning neck pain which is made worse with any activity lasting over 10 minutes. Her pain was felt to be severe enough to interfere with attention and concentration needed to perform even simple work tasks on a constant basis. Out of an 8-hour work day, the Claimant was restricted to sitting less than 2 hours and standing/walking less than 2 hours. Ms. Krause required a sit/stand option and would need to take unscheduled work breaks throughout the day in order to lie down. As a result of her impairments or the need for treatment, the Claimant would likely be absent more than 4 days per month.

(Plf. Brief at 2) (citing A.R. 414-18). The ALJ found that the above-referenced questionnaire responses were entitled to little weight because they were not well supported by the objective

---

[2]Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004). The claimant bears the burden of demonstrating that her drug and alcohol abuse was not a "contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535, 416.935; *see Cage v. Commissioner*, No. 09-4530-cv, __ F.3d __, 2012 WL 3538264, at * 4-6 (2d Cir. Aug. 17, 2012); *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability.

medical evidence and were undermined by the inconsistent findings Dr. Biancalana made in her treatment notes.

        In 2002, plaintiff had a C5-6 discectomy with anterior fixation performed by Dr. Davis.  (A.R. 279, 317).  MRIs taken of her cervical spine in 2005 indicated relatively mild degenerative changes.  (A.R. 255-56, 259, 268-69, 346-47).

        On October 28, 2005, plaintiff reported to Dr. Biancalana that her work as a floor clerk was "very physical."  She complained of migraine headaches and neck pain.  She reported a history of cocaine abuse, but indicated that she had not used it in more than a decade.  She stated that she smoked 1.5 packs of cigarettes per day and drank 4 to 5 cups of coffee, but apparently made no mention of her alcohol abuse.  (A.R. 324-25).  Plaintiff is an alcoholic who has experienced intermittent periods of sobriety.  (A.R. 251).

        On November 23, 2005, plaintiff reported that she quit her job.  (A.R. 323).  On December 7, 2005, plaintiff advised Dr. Biancalana that she had been out shoveling snow.  She was walking on a daily basis.  Although plaintiff experienced some lower back pain after sleeping, this was only initially, and after walking she was fine.  (A.R. 322).

        On January 23, 2006, plaintiff reported experiencing rib pain a few days after a car accident.  (A.R. 383).  X-rays of her ribs returned normal results.  (A.R. 344).  Plaintiff reported that she lost her medication in the accident.  Dr. Biancalana refilled her methadone prescription.  (A.R. 319).  On May 7, 2006, plaintiff reported "good daily functioning" and that she did not experience daytime sedation from her medication.  (A.R. 315).  On July 3, 2006, Dr. Biancalana noted that plaintiff had a complete range of motion in her shoulder with no restrictions.  Her gait was normal.

(A.R. 308).  On September 27, 2006, Dr.  Biancalana stated that plaintiff was "doing really well." (A.R. 304).

On January 23, 2007, plaintiff reported to Dr. Biancalana that she was "doing fine" and was "[n]ow a stay at home mom."  (A.R. 300).  She was exercising on a daily basis and her posture and gait were normal.  (A.R. 300).  On March 21, 2007, plaintiff stated that she continued to do well and that she had been "doing powerhouse cleaning which ha[d] given her some indoor exercise."  (A.R. 298).

On November 18, 2008, Dr. Biancalana "shredded" plaintiff's methadone prescription.  (A.R. 403).  Days later, she indicated that she had declined to renew plaintiff's prescription and had asked her to come in for a visit.  (A.R. 402).

On November 25, 2007, plaintiff appeared at Munson Medical Center's Urgent Care (UC) Unit complaining of hand tremors and other symptoms.  Plaintiff gave a history of "intermittent sobriety."  (A.R. 251).  Her pattern had been to drink four 22-ounce beers per week.  She stated that she had last consumed alcohol on Halloween.  She reported that Dr. Biancalana was not going to give her any more medications.  Dr. Alba's impression was that plaintiff was suffering from mild alcohol withdrawal symptoms.  Further, she encouraged plaintiff to meet with Dr. Biancalana and discuss a more gradual termination of her narcotic medication.  (A.R. 251-52).

On November 27, 2007, plaintiff informed Dr. Biancalana of  her visit to Munson Urgent Care and the diagnosis that she "could be withdrawing from her drugs."  Plaintiff denied abusing her prescription medication.  (A.R. 289).

On December 1, 2007, plaintiff sustained a scalp laceration.  She had been drinking at a party, fell backwards out of her chair, and hit her head against a wall.  (A.R. 244).  Her alcohol

level measured "256 mg/dL."  (A.R. 248, 348).  The CT scan of her head returned normal results. (A.R. 249, 342).  Her cervical and upper thoracic spine CT scan showed "[n]o acute osseus abnormality." (A.R. 250, 341).  On December 5, 2007, plaintiff admitted that she was drinking alcohol "more regularly" and was planning on going back to AA.  (A.R. 287).

On January 4, 2008, plaintiff reported that she was staying at home with her son.  She had not returned to AA.  (A.R. 286).  On April 30, 2008, plaintiff reported migraine headaches, vomiting, and light sensitivity.  She stated that she was not drinking alcohol.  (A.R. 281).  October 21, 2008 progress notes record that plaintiff's gait was normal.  Her left arm strength was 5/5 with some discomfort.  She had a full range of shoulder motion and her grip strength was 5/5.  There was no swelling or effusion.  Plaintiff reported that she had just returned from a recent trip to Mississippi. (A.R. 274).  On November 21, 2008, Dr. Biancalana observed that plaintiff's gait was normal.  She was able to raise both shoulders to 180 degrees.  It was easier for her to lift on the left rather than the right.  Her shoulder strength was 5/5 and her grip strength was 5/5.  (A.R. 271).

On March 10, 2009, Dr. Biancalana noted that plaintiff was "trying to get disability based on her neck and scoliosis."  (A.R. 398).  There are no treatment records from Dr. Biancalana dated after March 10, 2009.

On July 20, 2009, Timothy Archer, M.D., observed that plaintiff was in the process of "trying to figure out how to get off methadone.  She gets it monthly from Dr. Biancalana, but uses them up faster than she is supposed to and is now out of it."  (A.R. 406).  Dr. Archer's diagnosis was medication abuse with early narcotic withdrawal symptoms.  He gave plaintiff two methadone tablets and advised her to follow-up with her physician and undertake a "detox program."  (A.R. 406).

-8-

On August 7, 2009, plaintiff appeared at the Traverse City Health Clinic and was treated by Nurse Practitioner Rasmussen. Plaintiff stated that she had been in the hospital with opiate withdrawal symptoms and that she wanted non-narcotic pain management. (A.R. 410). She expressed concern that if her pain was not controlled, she would resort to alcohol. She received a trial of a Lidoderm patch and an Ultram prescription. (A.R. 410). On November 6, 2009, plaintiff stated that she had not participated in a substance addiction program. She had used a friend's Vicodin. (A.R. 408). On December 16, 2009, plaintiff received a refill of her Ultram prescription. (A.R. 407).

On September 30, 2010, plaintiff saw Ms. Rasmussen. The purpose of this visit was to have Rasmussen complete disability paperwork and to address plaintiff's sinus infection. (A.R. 419). Nurse Rasmussen recorded plaintiff's subjective complaints and then incorporated them into "Cervical Spine Residual Functional Capacity Questionnaire" responses.[3] (A.R. 415). Thus, the opinions expressed in the RFC questionnaire responses were extraordinarily restrictive. (A.R. 414-18). The document is signed by both Ms. Rasmussen and Dr. Biancalana. (A.R. 418). The ALJ found that the extreme RFC restrictions suggested in the questionnaire responses were entitled to little weight.

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see*

---

[3]The questionnaire responses cover the relatively brief period from August 7, 2009, through September 30, 2010: the exact period from plaintiff's first visit with Nurse Rasmussen until she completed the RFC questionnaire. (A.R. 410, 414). Plaintiff offers no explanation why the RFC questionnaire signed by Dr. Biancalana states that plaintiff's initial visit occurred on August 7, 2009. (A.R. 414). The four-year discrepancy between Biancalana's 2005 progress notes (A.R. 323-25) and the initial visit date listed in RFC questionnaire (A.R. 410) indicates that Nurse Rasmussen wrote the questionnaire responses and that Dr. Biancalana later added her signature. (*see* A.R. 418).

*Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  A treating physician's opinion that a patient is disabled is not entitled to any special significance.  *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician.").  Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference.  *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).  "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.  Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).  A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling

weight.  *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see*

*also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that

merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight

because it is not well-supported by medically acceptable clinical and laboratory diagnostic

techniques or is inconsistent with other substantial evidence in the record, the opinion should not

necessarily be completely rejected; the weight to be given to the opinion is determined by a set of

factors, including treatment relationship, supportability, consistency, specialization, and other

factors.  *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*,

SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c),

416.927(c); *Martin v. Commissioner*, 170 F. App'x  369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the

weight accorded their treating sources independent of their substantive right to receive disability

benefits."  *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 652

F.3d 653, 659-61 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).

"[T]he procedural requirement exists, in part, for claimants to understand why the administrative

bureaucracy deems them not disabled when physicians are telling them that they are."  *Smith*, 482

F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).  The ALJ did not

violate any aspect of the treating physician rule.  He gave a more than adequate explanation why

some of Dr. Biancalana's opinions[4] regarding plaintiff's RFC were rejected:

---

[4]There is no need for a separate discussion of the identical questionnaire responses provided
by Ms. Rasmussen.  A nurse practitioner is not an "acceptable medical source."  *See* 20 C.F.R. §§
404.1513(a), (d), 416.913(a), (d); *see also Turner v. Astrue*, 390 F. App'x 581, 586 (7th Cir. 2010).

As for the opinion evidence, I considered the September 2010 assessment provided by Flora Biancalana, M.D., the claimant's treating physician. Dr. Biancalana opined the claimant's pain or other symptoms would constantly be severe enough to interfere with attention and concentration needed to perform even simple work tasks (8F/3). However, she assessed the claimant would be able to tolerate moderate work stress (8F/3). She reported the claimant would be unable to walk any distance without experiencing severe pain (8F/3). She noted the claimant would be able to sit up to 15 minutes at a time and stand up to 10 minutes at a time (8F/3). She opined the claimant would be able to sit as well as stand and/or walk less than two hours each during an eight-hour workday (8F/4). Dr. Biancalana assessed the claimant must walk every 15 minutes for 10 minutes at a time (8F/4). She opined the claimant would need to be able to shift positions at will and take unscheduled breaks often minutes in duration every fifteen minutes (8F/4). She reported the claimant would rarely be able to lift and carry less than ten pounds (8F/4). She opined the claimant retained the ability to look down frequently turn her head left or right rarely, and hold her head in a static position occasionally, but never look up (8F/4).

Dr. Biancalana also assessed the claimant is able to occasionally stoop and crouch (8F/4). She reported the claimant would be able to twist and climb stairs rarely (8F/5). She stated the claimant must never climb ladders (8F/5). She opined the claimant had significant limitations in her ability to handle and finger, such that, during the course of an eight-hour workday, the claimant would be able to grasp 25 percent of the day, perform fine manipulation 50 percent of the day, and reach overhead 50 percent of the day with her right upper extremity (8F/5). Dr. Biancalana noted the claimant would be able to grasp, reach overhead, and perform fine manipulations less than five percent of the day with her left upper extremity (8F/5). She assessed the claimant's impairments would produce good and bad days (8F/5). She opined the claimant would miss more than four days of work each month because of her impairments or treatment (8F/5). I accord some weight to the opinion of Dr. Biancalana, as she is a treating physician who is familiar with the claimant's condition. However, Dr. Biancalana's assessment is inconsistent with her own physical examination findings and prescribed course of treatment (*See, generally*, 2F and 3F).

(A.R. 18). The extreme restrictions suggested in the questionnaire responses were inconsistent with

the findings Dr. Biancalana made in her progress notes and with the conservative course of

---

Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 1 (SSA Aug. 9, 2006)). If the RFC questionnaire responses had been entitled to additional weight, it would have been based on the presence of a treating physician's signature.

treatment, which had yielded favorable results.  The court finds no violation of the treating physician rule.

## 2.

Plaintiff argues that the ALJ "failed in his duty" under SSR 96-5p to recontact Dr. Biancalana for clarification of any inconsistencies in her statement.  (Plf. Brief at 3-4).  This argument is patently meritless.  In *Ferguson v. Commissioner*, 628 F.3d 269 (6th Cir. 2010), the Sixth Circuit held that there were "two conditions that must both be met to trigger SSR 96-5p's duty to recontact: 'the evidence does not support a treating source's opinion ... and the adjudicator cannot ascertain the basis of the opinion from the record.'"  *Id.* at 273 (quoting 1996 WL 374183, at * 6).  An unsupported opinion alone does not trigger the duty to recontact.  *Ferguson*, 628 F.3d at 273.  SSR 96-5p's duty is not triggered where, as here, the ALJ did not reject the physician's opinions because they were unclear to him, but instead he rejected the opinions because they were based on plaintiff's subjective complaints and were not supported by objective medical evidence.  *Ferguson*, 628 F.3d at 273.  "'[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician.'"  *Ferguson*, 628 F.3d at 274 (quoting *Poe v. Commissioner*, 342 F. App'x 149, 156 n. 3 (6th Cir. 2009)).  Where the duty is not triggered, it is not violated.  *Ferguson*, 628 F.3d at 274.

## **Conclusion**

For the reasons set forth herein, a judgment will be entered affirming the Commissioner's decision.


Dated:   September 28, 2012                    /s/  Joseph G. Scoville
                                                                   United States Magistrate Judge